Upon review of all of the competent evidence of record with reference to the errors assigned, and finding good grounds to reconsider the evidence, the Full Commission REVERSES the Opinion and Award of the deputy commissioner and enters the following Opinion and Award:
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to the provisions of the North Carolina Workers' Compensation Act.
2. Employee's date of injury and death is June 20, 1996.
3. On the date of employee's death, June 20, 1996, an employment relationship existed between employee and defendant.
4. Defendant is self-insured for its workers compensation liability, and the third party administrator is RISCORP of North Carolina.
5. Employee's average weekly wage was $595.58 with a resulting compensation rate of $397.25.
6. The employee suffered a fatal heart attack while at work with the employer.
7. The parties stipulated to a package of medical records and I.C. Forms at the hearing which included the following:
(a) Oconee Memorial Hospital;
(b) EMS Report;
(c) Dr. James Hellams;
(d) Dr. Charles James;
(e) Charter Behavioral System of Asheville;
(f) Dr. Guyton Winker; and
(g) Death Certificate.
Based upon all of the competent evidence of record, the Full Commission makes the following
 FINDINGS OF FACT
1. Julius Spencer Wall (hereinafter, decedent) was employed as a foreman for defendant on June 20, 1996.
2. Defendant was in the business of gas line construction and decedent's primary duties as a foreman included general supervisory activities, operating a backhoe and trenchers, welding occasionally and making sure heavy equipment is transported from one work site to another on trailers pulled behind trucks. Decedent sometimes drove the truck which pulled heavy equipment to job sites, but other crew members loaded the equipment or hitched the trailers to the truck for him.
3. On June 20, 1996 defendant had at least three work sites, one where Ricky Thomas was foreman, a second site near Townville, South Carolina, where decedent was foreman, and a third site where decedent was also foreman. Work at the second site was being finished up with a Ford cleanup tractor and work at the other two sites was underway.
4. On the morning of June 20, 1996 the Ford cleanup tractor needed to be transported from the second site to the third. Aubrey Long arrived first at the second job site to meet decedent for the purpose of picking up the Ford tractor and moving it to another site. A trailer was needed in order to move the tractor, but there was no trailer at the second job site where the tractor was located. When decedent arrived at the second job site to pick up the Ford tractor between 6:30 and 7:00 a.m., he had a trailer already hitched to the back of his truck. Decedent had gotten the trailer from the Ricky Thomas job site prior to his arrival at the second job site to pick up the Ford tractor.
5. The trailer that decedent was pulling with his truck on the morning of June 20, 1996 had a trailer hitch that had to be picked up off the ground and aligned with the ball on the rear of the truck in order to hitch. Usually the trailer hitch had to be moved back and forth to achieve alignment. The trailer had a pivot point and the tongue of the trailer had to be physically lifted in order to reach the pivot point. If lifted up too far, the weight of the trailer would shift all the way back and if not lifted far enough, the weight of the trailer would shift toward the ground. In order to hook the trailer, a person would have to bend down, pick up the trailer hitch with both hands and arms, stand, and maneuver the trailer in place for hitching. Some of the trailers defendant used had a jack which made hitching easier, but the jack was broken on the trailer decedent was pulling on June 20, 1996, requiring that the tongue of the trailer be physically picked up from the ground for hitching purposes. Although the exact weight of the trailer was not known by the witnesses who testified, the trailer was too heavy to be lifted ordinarily by one person, but it could be lifted by one person, when necessary.
6. Decedent and Aubrey Long drove the Ford tractor onto the trailer using ramps, secured the tractor onto the trailer and drove back to the Ricky Thomas job site. While at the Ricky Thomas job site, decedent complained of indigestion and got a Zantac from Ricky Thomas. During this same period of time (around 8:30 a.m.), decedent talked to his brother, Jim Wall, by telephone and was expected to meet his brother shortly thereafter at Hardees. Decedent did not stop at Hardees, but went immediately to the third job site to deliver the tractor, instead.
7. Decedent and his crew left the Ricky Thomas site around 8:30 a.m. enroute to the third site which was about ten minutes away. Decedent rode alone in his truck which was pulling the trailer while the crew drove in another vehicle. When the decedent arrived, his son was on the telephone with his uncle, the decedent's brother. Decedent proceeded to get out of his truck and told the other workers to unload the tractor. After a brief exchange with his son, decedent turned around and placed his head on his truck and then fell over from an apparent heart attack.
8. Decedent's son called for rescue assistance. Workers gave decedent CPR and transported him to Oconee Memorial Hospital where he was pronounced dead.
9. The immediate cause of death listed on the Certificate of Death was (a) "Cardiac Arrest" and (b) "probable Acute Myocardial Infarction." The approximate interval between onset and death was "1 hour".
10. Decedent's death occurred within the time and space limits of his employment and therefore arose in the course of his employment. Therefore, the claimant is entitled to a presumption that the death was the result of an accident and arose out of the employment. Defendant has the burden of rebutting this presumption.
11. Since the cause of death is known, the dispositive question is whether decedent's known cause of death (heart attack) was caused by conditions of his employment and whether his death was due to an accident.
12. If decedent hitched the trailer to his truck without assistance, such an exertion would have been unusual and could have precipitated his heart attack. The circumstances bearing on the work-relatedness of his heart attack are therefore unknown.
13. The trailer which decedent pulled between the sites on the morning of June 20, 1996 was particularly difficult to hook up. It had no operational jack with a wheel on it and therefore one had to pick the tongue up off the ground with both hands and use both arms because of the weight to lift and place the trailer on the hitch. The trailer had to be maneuvered back or forth or from side to side in order to fit it on the ball of the hitch.
14. Decedent did not have the trailer hitched to his truck when he arrived at his brother's camper at 10 p.m. the night before he died, but he did have it hitched to his truck when he met Aubrey Long between 6:30 a.m. and 7:00 a.m. the next morning at the second worksite where the Ford tractor which needed transporting was located. No evidence was offered that any one else hitched the trailer to decedent's truck or assisted him in doing so. Based on all reasonable inferences from the evidence, the Full Commission therefore finds that decedent hitched the trailer to his truck without assistance on the morning of June 20, 1996.
15. Hitching the trailer to his truck without assistance would have required an unusual exertion due to the weight of the trailer and the fact that the jack was broken. Expert medical testimony has established that such an unusual exertion could have precipitated decedent's heart attack. Therefore, the Full Commission presumes that the unusual exertion required of decedent in lifting and hitching the trailer to his truck caused decedent's heart attack and death and was thus an accidental death.
16. The medical cause of decedent's death is known, but the circumstances bearing on the work-relatedness of his death are unknown. However, since decedent's death occurred within the course of his employment, the Full Commission is able to presume that decedent's death was work-related and therefore compensable. Also, reasonable inferences from the evidence indicate that decedent's death from heart attack was caused by unusual exertion.
17. Defendant must present evidence of a non-compensable cause to rebut the presumption that decedent's death was work-related.
18. Decedent's death by heart attack resulted from an injury by accident arising out of and in the course of his employment on June 20, 1996.
19. Decedent is survived by three children, all of whom were over 18 years of age at the time of his death.
***********
Based on the foregoing findings of fact and stipulations, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. While a claimant has a duty of proving each element of his claim, there is a presumption of compensability in a workers' compensation case where the circumstances bearing on work-relatedness are unknown and the death occurs within the course of employment as the facts in this case establish. Julius Spencer Wall's death occurred within the course of his employment and is presumed to have arisen out of his employment. Defendant has not presented sufficient evidence to establish that plaintiff's death was caused due to non-compensable circumstances. Pickrell v. Motor Convoy, Inc., 322 N.C. 363,368 S.E.2d 582 (1988); Wall v. North Hills Properties, Inc.,125 N.C. App. 357, 481 S.E.2d 303 (1997).
2. Decedent's unusual or extraordinary exertion or overexertion caused by his employment duties immediately preceding his fatal heart attack constituted an accident within the meaning of the Workers' Compensation Act. Gen. Stat. § 97-2(6). Wall v.North Hills Properties, Inc., 125 N.C. App. 357,481 S.E.2d 303 (1997).
3. As a result of unusual or extraordinary overexertion arising out of and in the course of his employment on June 20, 1996, Julius Spencer Wall (decedent) died from a heart attack. Decedent's death is therefore compensable. N.C. Gen. Stat. §97-2(6). Wall v. North Hills Properties, Inc.,125 N.C. App. 357, 481 S.E.2d 303 (1997).
4. Decedent's three children are entitled to four-hundred (400) weeks of compensation at the rate of $397.25 per week, to be divided in equal shares. N.C. Gen. Stat. § 97-2(6); § 97-38; and § 97-39.
5. Claimant is entitled to have defendant reimburse for decedent's burial expenses not to exceed $2,000.00.
6. It is in the best interest of decedent's children that all compensation due them be paid in a single lump sum. N.C. Gen. Stat. § 97-44.
7. An attorney's fee of twenty-five (25) percent of the compensation awarded herein is approved for counsel for plaintiff.
8. All medical bills which occurred during the medical emergency which decedent did not survive shall be paid by defendants. N.C. Gen. Stat. § 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to decedent's three children four-hundred (400) weeks of compensation at the rate of $397.25 per week in a lump sum, subject to the attorney's fee hereafter awarded. All compensation which has not accrued shall be commuted to present value and paid in a lump sum.
2. A reasonable attorney's fee of 25% of the compensation due under paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid directly to him in a lump sum as a deduction from the award herein.
3. Defendant shall pay burial expenses not exceeding $2,000.00 and all medical expenses incurred on behalf of decedent as a result of decedent's compensable death when bills for same have been submitted to defendant and approved pursuant to procedures established by the Commission.
4. Defendant shall pay the costs.
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
J. Howard Bunn participated in the Full Commission's review hearing, but retired prior to decision in this case.
J. HOWARD BUNN, Jr. CHAIRMAN